**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHRIS POLIZZI** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3972** |
| **LYNN COOPER (WARDEN)** | **SECTION "J"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Factual Background

The petitioner, Chris Polizzi ("Polizzi"), is a state prisoner currently incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2] On August 19, 2003, Polizzi was charged by bill of information in Jefferson Parish with one count of having sexual intercourse with a known juvenile without her consent and by force of threats of violence and with one count of oral sexual

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

battery on the known juvenile by touching her genitals with his mouth and she was less than 15 years old and at least three years younger than Polizzi.[3]

The record reflects that, in June of 2003, the victim, 14-year-old A.R.[4], lived with her family at 769 Avenue C in Westwego, Louisiana.[5] On June 18, 2003, she spent the night at the house next door, 765 Avenue C, where her friends Michelle Gisclair ("Gisclair") and Timmy Adams ("Adams") lived with Melissa and David Trepagnier. Polizzi, who was 59-years-old at the time of trial, had been staying at the Trepagnier house for a couple of months.

At 1:16 p.m. on June 19, 2003, Officer Terry Fourcade of the Westwego Police Department went to A.R.'s house in response to a reported rape. When he went inside the house, he discovered A.R. sitting on a couch between a woman and a man, whom Officer Fourcade assumed were the parents. A.R. was crying and both adults were doing most of the talking. The adults told Officer Fourcade that A.R. had told them that Polizzi had sexually assaulted her on the previous night. Officer Fourcade immediately notified his supervisor of the situation.

When he went next door, Officer Fourcade saw Polizzi smoking a cigarette. He was in the process of taking bags of clothing from the 765 Avenue C house and placing them into his vehicle. Polizzi told Officer Fourcade that he was going to leave. Officer Fourcade told Polizzi that he was under investigation and placed him the rear of the police unit.

---

[3]St. Rec. Vol. 3 of 6, Bill of Information, 8/19/03.

[4]"The victim and her family are identified by initials in order to protect her identity. See La. R.S. 46:1844(W)(3)." *State v. Polizzi*, 924 So.2d 303, 306 n.1 (La. App. 5th Cir. 2006); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-478, p. 3 n.1, 2/14/06.

[5]The facts of the case were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Polizzi*, 924 So.2d at 306-309; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-478, pp. 3-9, 2/14/06.

At approximately 1:27 p.m. Detective Edward Beyerback arrived and interviewed A.R. According to his supplemental report, which was introduced into evidence at trial and published to the jury, A.R. told him that on June 18, 2003, she was visiting with her neighbors, Gisclair and Adams. At approximately 11:00 p.m., Polizzi, who was sleeping on a mattress on the floor in the room, woke up A.R., who was sleeping on the sofa nearby, and told her to wash herself. She went to the bathroom and upon returning, she observed Polizzi kneeling on the mattress wearing nothing but a condom on his penis. A.R. said that she lay down on the sofa, but Polizzi picked her up and brought her to the mattress. He touched her all over and removed her clothing.

A.R. told Polizzi to stop, but he refused. He then had vaginal intercourse with her. Polizzi then turned her over and inserted his penis into her rectum, but he stopped when she said it hurt. He then started vaginal intercourse again, and then he performed oral sex on her. When he was finished, A.R. went back to sleep on the sofa. She said that the incident lasted approximately three hours.

The next morning, A.R. showered and then went fishing with Gisclair, Adams, and the Trepagniers. While fishing, A.R. told Melissa what had happened the night before. The adults then brought the victim home and A.R.'s mother was informed. The officers also took a statement from Polizzi, and he was taken to the police station where he was arrested for the forcible rape and oral sexual battery of A.R.

Polizzi was tried before a jury on December 15 and 16, 2004, and he was found guilty as charged on both counts.[6] The Trial Court sentenced Polizzi on January 6, 2005, to serve a 25 year

---

[6]St. Rec. Vol. 3 of 6, Trial Minutes, 12/15/04; Trial Minutes, 12/16/04; Jury Verdict (Count 1), 12/16/04; Jury Verdict (Count 2), 12/16/04; St. Rec. Vol. 1 of 6, Trial Transcript, 12/15/04; Trial Transcript, 12/16/04; St. Rec. Vol. 2 of 4, Trial Transcript (continued), 12/16/04.

sentence on count one, without the benefit of parole, probation, or suspension of sentence for the first two years, and a concurrent 10 year sentence on count two without benefit of parole, probation, or suspension of sentence.[7] The State also filed a multiple bill charging Polizzi as a second offender.[8]

On direct appeal, Polizzi's counsel set forth two assignments of error:[9] (1) the evidence was insufficient to support the verdicts of forcible rape and oral sexual battery; and (2) the sentences imposed were excessive. Counsel also requested that the Court conduct a review for errors patent on the face of the record. On December 15, 2005, Polizzi moved for and was granted leave to file a *pro se* supplemental brief in support of his appeal on the grounds of ineffective assistance of counsel.[10] He never filed the brief.[11]

In the meantime, on October 25, 2005, Polizzi submitted a motion to the Trial Court seeking review of his claim of ineffective assistance of counsel.[12] The Trial Court construed the motion as one seeking post-conviction relief and denied the application without prejudice for failure to utilize the proper form.[13]

On February 14, 2006, the Louisiana Fifth Circuit Court of Appeal affirmed Polizzi's convictions and sentences finding no merit to either of the claims raised. On review for errors

---

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 1/6/05; St. Rec. Vol. 2 of 6, Sentencing Transcript, 1/6/05.

[8]*Id*.; St. Rec. Vol. 1 of 6, Multiple Bill, 1/6/05.

[9]St. Rec. Vol. 2 of 6, Appeal Brief, 05-KA-0478, 5/31/05.

[10]St. Rec. Vol. 2 of 6, Motion to Supplement, 12/15/05; 5th Cir. Order, 05-KA-0478, 12/16/05.

[11]*State v. Polizzi*, 924 So.2d at 310 n.5; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-478, p. 9 n.5, 2/14/06.

[12]St. Rec. Vol. 4 of 6, Motion for Ineffective Assistance of Counsel, 11/7/05 (dated 10/25/05).

[13]St. Rec. Vol. 4 of 6, Trial Court Order, 11/10/05.

patent, the Court remanded the matter to the Trial Court to provide Polizzi with the appropriate sex offender registration notice and notice of the limitations for filing for post-conviction relief under La. Code Crim. P. art. 930.8, La. Rev. Stat. Ann. § 15:542.1, and La. Rev. Stat. Ann. § 15:543. The Trial Court complied on March 15, 2006.[14]

On March 14, 2006, Polizzi submitted a timely writ application to the Louisiana Supreme Court, which was filed by the Court on May 8, 2006.[15] In that application, he indicated his intent to present claims to the Court for review and that he needed additional time to present the claims. The record does not contain, and as argued by the State, it appears that he did not submit, a written presentation of any claims for that Court's review.

While that writ application was pending, on April 11, 2006, Polizzi entered a plea of guilty to the multiple bill charging him as a second felony offender.[16] The Trial Court vacated the prior sentence as to count one and re-sentenced him as a second offender to serve 25 years in prison without benefit of probation or suspension of sentence.[17]

Thereafter, on November 3, 2006, the Louisiana Supreme Court denied Polizzi's pending writ application without stated reasons.[18] Polizzi's conviction became final 90 days later, on February 1, 2007, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (5th Cir. 1999)(period for filing for certiorari with

---

[14]St. Rec. Vol. 4 of 6, Notice of Prescriptive Period for Post Conviction Relief, 3/15/06.

[15]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 06-KO-1052 (postmarked 3/14/06); St. Rec. 4 of 6, La. S. Ct. Letter, 2006-KO-1052, 5/08/06 (showing postal meter of 3/14/06).

[16]St. Rec. Vol. 4 of 6, Multiple Bill Sentencing Minutes, 4/11/06; Waiver of Rights-Plea of Guilty Multiple Offender, 4/11/06.

[17]*Id.*

[18]*State v. Polizzi*, 940 So.2d 660 (La. 2006); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2006-KO-1052, 11/3/06.

the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II. Procedural Background

On November 14, 2006, Polizzi submitted an application for post-conviction relief asserting that his counsel provided ineffective assistance on the following grounds:[19] (1) failed to object to the denial of the defense's motion for mistrial; (2) failed to object to an officer's admission that he tampered with evidence; (3) failed to move for a mistrial when the police report was delivered the night before trial; (4) failed to object to the chain of evidence; (5) failed to object to expert's hearsay testimony about tests she did not personally conduct; (6) failed to request independent analysis of the DNA evidence; (7) failed to object to hearsay testimony of Milton Dureau; (8) failed to object to the Trial Judge's comments made in front of the jury; (9) failed to prevail on his objection to the presentation of Polizzi's buckle knife; (10) failed to object to the jury instructions; (11) failed to file a motion to suppress the videotaped statement; (12) failed to call an expert to discuss the medication taken by the victim; (13) erroneously questioned the petitioner about his prior criminal activity; (14) failed to object to the prosecutor's prejudicial remarks; and (15) failed to conduct and adequate pretrial investigation. He also filed a memorandum in support of the application, in which he indicated several edits he wished to incorporate into his original pleading.[20]

After receiving a response from the State,[21] the Trial Court denied the application as supplemented on April 19, 2007, finding that Polizzi failed to establish his entitlement to relief under

---

[19]St. Rec. Vol. 4 of 6, Uniform Application for Post-Conviction Relief, 11/20/06 (dated 11/14/06).

[20]St. Rec. Vol. 4 of 6, Memorandum in Support, 2/26/07.

[21]St. Rec. Vol. 4 of 6, Trial Court Order, 3/1/07; State's Response, 4/13/06.

the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law. In doing so, the Court resolved that the claims asserted by Polizzi challenged nothing more than counsel's strategic decisions and he was not prejudiced by his counsel's decisions or his performance. The Court also held that the few arguments that did not involve counsel's strategic decisions did not create a basis for post-conviction relief, because Polizzi failed to make a showing that any attorney, however skilled in the law, could have prevailed on the pretrial arguments about which he complained. The Court further noted that the evidence against Polizzi included the young victim's testimony, as well as the DNA evidence collected from the victim's vagina. It reiterated the appellate court's conclusion that the eyewitness testimony, corroborated by the physical evidence, convicted Polizzi. The Court concluded that the evidence was overwhelming rather than it being the result of counsel's performance that convicted him. Polizzi did not seek timely review of this ruling.

On April 23, 2007, Polizzi filed a motion in the Trial Court seeking to compel the State to answer his post-conviction application.[22] He also filed a motion to compel seeking the same relief on May 7, 2007.[23] The Trial Court denied both motions in separate orders indicating that the State had timely filed an answer and the Court had already denied relief on the underlying application.[24]

Shortly thereafter, on June 6, 2007, Polizzi submitted an untimely[25] writ application to the Louisiana Fifth Circuit seeking review of the Trial Court's denial of his post-conviction application

[22]St. Rec. Vol. 5 of 6, Motion for Contempt, 4/23/07.

[23]St. Rec. Vol. 5 of 6, Motion to Compel, 5/7/07.

[24]St. Rec. Vol. 5 of 6, Trial Court Order, 5/22/07; Trial Court Order, 5/23/07.

[25]Pursuant to La. Code Crim. P. art. 922 and La. App. R. 4-3, Polizzi had 30 days from issuance of the Trial Court's order to file a writ application. Polizzi did not date his pleading but he did mail his writ application until June 6, 2007, which was not within that time period.

without an evidentiary hearing.[26] On October 1, 2007, the Louisiana Fifth Circuit denied the writ application finding that the Trial Court did not err in denying the application without a hearing since Polizzi's post-conviction claims were without merit.[27]

The record indicates that, on October 5, 2007, Polizzi submitted a "letter" of an unknown nature to the Louisiana Supreme Court which was returned to him unfiled.[28] He was advised by the Central Staff at the Louisiana Supreme Court that his "letter" was not in a procedurally proper form for the Court to consider and, therefore, it was not filed.[29]

On November 13, 2007, Polizzi submitted an untimely[30] writ application to the Louisiana Supreme Court alleging that the Trial Court erred in denying his application for post-conviction relief without an evidentiary hearing.[31] The Louisiana Supreme Court denied the application without stated reasons on September 19, 2008.[32]

---

[26]St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 07-KH-413, 6/11/07 (postmarked 6/6/07). The record indicates that Polizzi also submitted an application for writ of mandamus to the Louisiana Fifth Circuit on or about June 7, 2007. The mandamus was denied on June 28, 2007, because the Trial Court had already ruled on the application for post-conviction relief on April 19, 2007. St. Rec. Vol. 5 of 6, 5th Cir. Order, 07-KH-393, 6/28/07.

[27]St. Rec. Vol. 5 of 6, 5th Cir. Order, 07-KH-413, 10/1/07.

[28]St. Rec. Vol. 6 of 6, Central Staff Letter, 11/7/07.

[29]*Id.*

[30]La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. The applicable mailbox rule also considers the filing date to be the date upon which the inmate presents his pleading to prison officials for mailing to the state court. *See Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006); *accord*, *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X § 5).

[31]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 07-KH-2397, 12/12/07 (postmarked 11/13/07); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2007-KH-2397, 12/12/07 (showing postal meter of 11/13/07). The Court rejects any notion that this pleading was submitted to the Court on July 9, 2007, the date indicated next to Polizzi's signature. He was challenging the appellate court's order which was issued until October 1, 2007. The signature date is intentionally misleading.

[32]*State ex rel. Polizzi v. State*, 992 So.2d 946 (La. 2008); St. Rec. Vol. 6 of 6, 2007-KH-2397, 9/19/08.

While that writ application was pending, Polizzi filed a writ application with the Louisiana Supreme Court seeking review of his previously filed post-conviction writ applications pursuant to *State v. Cordero,* 993 So.2d 203 (La. 2008).[33] The Court denied the application on April 17, 2009, finding that he had not shown entitlement to relief under *Cordero*.[34] The Court also denied Polizzi's request for reconsideration on April 17, 2009.[35]

## III. Federal Habeas Petition

On June 15, 2009, the clerk of this Court filed Polizzi's petition for federal habeas corpus relief, in which he raised three grounds for relief:[36] (1) the evidence was insufficient to support the conviction; (2) the trial court imposed an illegally excessive sentence; and (3) his counsel provided ineffective assistance.

The State filed a response in opposition to Polizzi's petition alleging that Polizzi failed to exhaust available state court remedies as to his ineffective assistance of counsel claim. The State argues that he did not present the claim with any specificity to the Louisiana Fifth Circuit or the Louisiana Supreme Court rendering it unexhausted and not subject to review by this federal court. The State also contends that Polizzi did not raise his first two claims (or any claims) in his post-appeal writ application to the Louisiana Supreme Court. Although he sought leave to do so, he did

---

[33]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 08-KH-2066, 8/21/08 (dated 7/24/08); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2008-KH-2066, 8/21/08 (showing postal meter of 7/29/08). In *Cordero*, the court addressed accusations by former Director of Central Staff Jerold B. Peterson, that during his tenure, the Louisiana Fifth Circuit issued summary dismissals without judicial review of pro se post-conviction writ applications filed in the Louisiana Fifth Circuit.

[34]*State ex rel. Polizzi v. State*, 999 So.2d 751 (La. 2009); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2008-KH-2066, 1/30/09.

[35]*State ex rel. Polizzi v. State*, 6 So.3d 1274 (La. 2009); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2008-KH-2066, 4/17/09; St. Rec. Vol. 6 of 6, Petition for Reconsideration, 4/1/09 (postal metered 2/11/09, dated 2/4/09).

[36]Rec. Doc. No. 1.

not submit any substantive claims to that Court for review. The State concludes that Polizzi's first two claims also are not exhausted either on direct appeal or on collateral review.

## IV. **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on June 10, 2009.[38] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State argues that Polizzi has failed to exhaust state court remedies and the Court agrees that the claims are not exhausted and can be dismissed for that reason.

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Polizzi's petition on July 14, 2009, when the filing fee was paid. Though it was not so on the petition itself, Polizzi's signature on the pauper application submitted with his original petition was dated June 10, 2009. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

V. **Failure to Exhaust**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the

state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*., at 32.

In this case, a review of Polizzi's post-appeal writ application to the Louisiana Supreme Court reflects that he actually raised no claims to that Court for review. He indicated his intent to seek review, but he submitted no argument nor did he designate any claims for review. As noted above, he does not properly present claims to the state courts if they have read beyond the petition to find claims not designated or clearly raised. *Baldwin*, 541 U.S. at 32.

When he returned to the Louisiana Supreme Court after denial of his application for post-conviction review, the only question brought to the Court is whether the lower courts erred in denying his application for post-conviction relief without holding an evidentiary hearing. He did not specify any other claim for review.

Thus, a review of Polizzi's applications presented to the Louisiana Supreme Court reflects that none of the claims raised in this federal petition were properly or specifically raised there for review. His failure to present each of these arguments to each level of the Louisiana courts in a procedurally proper manner renders his federal claims unexhausted. *See Wilder*, 274 F.3d at 259; *Baldwin*, 541 U.S. at 29. The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

Polizzi has presented to this Court three unexhausted claims. His petition must therefore be dismissed without prejudice for failure to exhaust.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Chris Polizzi's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[39]

New Orleans, Louisiana, this 15th day of February, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[39]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.